1831.

Howland
v.
Scott.

---

## HOWLAND *vs* SCOTT.

Where S. owned a farm in the county of Queens, and about ten acres in ad-
dition, and made an agreement with F. to exhange with him the ten acres
for six acres adjacent to the farm, and possession was respectively taken
by S. and F.; and before the conveyances were executed on this exchange,
S. mortgaged his farm to G., and by mistake included in the mortgage the
ten acres instead of the six acres, and the mortgage was foreclosed in
chancery in 1825, and the mortgaged premises ordered to be sold; and S.,
who was alone interested in the surplus to be raised on the sale, employed
E., an auctioneer, to sell the property to pay off the mortgage; and the prop-
erty was exposed to sale and bid in for S.; and E. also attended the
master's sale as the agent of S., at which sale a map, which had been
made of the farm, including the six acres, was exhibited, as containing the
property to be sold; and the property was sold with reference to the map,
and for an amount much exceeding the mortgage and costs, and H. became
the purchaser; and after the sale, S. obtained the legal title to the six acres;
and having received the surplus monies and becoming insolvent; upon a
bill filed by H., praying for a decree to compel S. to convey to him the six
acres; *it was held*, that S. having obtained the whole consideration money
for the land, including the six acres, under circumstances which amounted
to a fraud upon H., S. would be considered as a trustee for H., and would
be decreed to convey to H. the six acres.

April 20th.

THIS cause was heard on pleadings and proofs.    The facts
are stated in the opinion of the court.

*G. Brinckerhoff*, for the complainant.

*R. Emmett*, for the defendant.

THE CHANCELLOR.    From the pleadings and proofs in
this cause, I consider the following facts established : Scott
was the owner of a farm in the county of Queens, and of an-
other piece of land of about 10 acres.    He made an agree-

ment to exchange the ten acre piece with J. Fowler for six acres adjacent to the farm, and possession was taken accordingly. Before any conveyances were executed on this exchange, Scott mortgaged his farm to the Globe Insurance Company, and by mistake the ten acre lot was included in the mortgage, instead of the six which had been taken in exchange therefor. The mortgage was foreclosed in the equity court of the first circuit in May, 1825, and the mortgaged premises were ordered to be sold. Scott, the defendant, who was exclusively interested in the surplus to be raised on the sale, employed Sergeant, an auctioneer, to sell the property to raise the money to pay off the mortgage; and a map was made of the farm, showing its location and boundaries, and including the six acre tract. The property was put up and bid in for the defendant. Sergeant was then employed to attend the master's sale as auctioneer, and put up printed notices of the sale of the farm by the master, and the map was exhibited as containing the property to be sold. Sergeant attended the sale, and in fact acted as auctioneer, and as the agent of the defendant, to make the property produce its highest value. Sergeant denies that he acted as such agent at the request, or by the procurement of the defendant; but his statement is contradicted, in several important particulars, by the testimony of the master, and by that of Mr. Brinckerhoff and W. Jackson, as well as by the map which he exhibited at the sale. The weight of testimony is decidedly in favor of the fact that he acted as the agent of Scott, and with his consent and concurrence. The property was put up and sold with reference to the map then produced, and which included the six acres as a part of the farm. The bidders and the master so understood it; and the latter, who knew the six acres were not in the description in the mortgage, supposed the object of the defendant was to increase the surplus by selling the six acres with the residue of the farm. Although Sergeant and Nelson knew the six acres were not included in the mortgage, I am satisfied the defendant intended the bidders should understand the property to be sold was that described and plainly marked as such on the map; and there is not the least

1831.<br>Howland<br>v.<br>Scott.

doubt that they did so understand it, and bid accordingly, by which means a large surplus was produced beyond the amount of the mortgage and costs. If the defendant intended to insist upon the payment of the whole purchase money, and to retain the six acres to himself, under such circumstances, it was a gross fraud upon the purchaser, against which a court of equity is bound to relieve. Something was said as to the mistake about the six acres, before the purchase money was paid ; and probably the complainant was not bound to pay his bid until the question was settled, or the value of the six acres deducted. But I see no good reason why he should suffer because he thought proper to submit it to the court, to do him justice in the premises. The surplus was paid into court, and after the sale, Scott obtained the legal title to the six acres, by a conveyance from the person with whom the exchange had before been made. The complainant applied to the equity court, to compel the defendant to procure for him a good title as to the six acres; and if he could not do that, to have the value thereof refunded to him out of the surplus money remaining in court. That court denied the application, and permitted the defendant to take the money out of court. This decision was reversed, on appeal to Chancellor Sanford ; but, in the mean time, the defendant obtained the surplus monies from the clerk, and being insolvent, the complainant has now no remedy except against the land. The complainant asks a decree compelling the defendant to convey to him the six acres of land which is not included in the description in the master's deed. The defendant having obtained the whole consideration money therefor, and under circumstances which amounted to a gross fraud on the purchaser, 1 think Scott must be considered, in equity, as having taken the legal title from Fowler as a trustee for Howard. The defendant must therefore, within ten days after service of a copy of the decree in this case, convey to the complainant, by a good and sufficient deed to be approved of by a master residing in the city of New-York, the six acres of land, and deliver possession thereof to him. He must also pay to the complainant his costs of

this suit to be taxed, and the injunction must be made perpetual; and the complainant is to have execution to enforce the performance of this decree, and compel the payment of such costs.